**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

HE GROUP, INC.,                                   :        Civil No. 1:20-CV-00132
                                                  :
              Plaintiff,                          :
                                                  :
       v.                                         :
                                                  :
BOROUGH OF MIDDLETOWN and                         :
AL GEOSITS,                                        :
                                                  :
              Defendants.                         :        Judge Jennifer P. Wilson

## MEMORANDUM

This is an equal protection case that is currently before the court on a motion to dismiss for failure to state a claim upon which relief may be granted or, alternatively, for lack of subject matter jurisdiction. The motion additionally seeks to strike several allegations from the currently operative complaint. For the reasons that follow, the motion is denied.

### BACKGROUND AND PROCEDURAL HISTORY

Plaintiff HE Group, Inc. ("HE Group"), initiated this case through the filing of a complaint on January 24, 2020, naming as defendants the Borough of Middletown, Pennsylvania ("Middletown" or "the Borough") and Al Geosits ("Geosits"), who served as the Borough's Zoning and Codes Officer during the period of time relevant to this case. (Doc. 1.) Defendants moved to dismiss the complaint on April 3, 2020, *see* Doc. 7, and HE Group then filed an amended complaint on May 1, 2020. (Doc. 11.)

According to the allegations in the amended complaint, HE Group is a Pennsylvania corporation with its principal place of business in Middletown that owns a one-quarter acre property on Union Street in Middletown ("the Union Street property").  (*Id.* ¶¶ 1, 8.)  At all times relevant to this case, Howard Dong ("Dong") has served as President of HE Group.  (*Id.* ¶ 11.)

HE Group purchased the Union Street property on December 16, 2016, with the intent of opening a sit-down Chinese restaurant at the location.  (*Id.* ¶¶ 12–14.) Less than an hour after HE Group settled on the property, the mayor of Middletown, James H. Curry, III ("Mayor Curry"), approached Dong and told him that he could not open a Chinese restaurant on the Union Street property.  (*Id.* ¶ 15.)  At the time of this conversation, Curry's primary residence was across the street from the Union Street property.  (*Id.*)

Later that day, the Borough's then-Zoning and Codes Officer, Robert Moyer ("Moyer"), visited the Union Street property.  (*Id.* ¶ 16.)  Moyer informed Dong that Mayor Curry had been involved in an argument with several Borough employees because Mayor Curry had not previously been informed of Dong's plan to open a Chinese restaurant at the Union Street property.  Moyer advised Dong to "be careful" because Mayor Curry was a lawyer, but also informed Dong that Mayor Curry had no direct oversight over Borough zoning or code enforcement. (*Id.*)

Several days after these encounters, Mayor Curry texted Dong and told Dong that he wanted to meet with him in person the following day.  (*Id.* ¶ 19.) Dong was unable to confirm a time and place for a meeting with Mayor Curry, so he appeared at the Borough's office and spoke with a receptionist, who advised him to attend that night's meeting of the Middletown Historical Restoration Committee ("the committee").  (*Id.* ¶ 20.)  Dong attended the meeting, though members of the committee were unsure why Dong was advised to attend the meeting.  (*Id.* ¶ 21.)  After the meeting, a member of the committee told Dong that Mayor Curry had set up the committee meeting in an effort to make HE Group's restaurant "fall."  (*Id.* ¶ 22.)

On or about December 16, 2016, HE Group applied for a zoning variance from the Middletown Zoning Hearing Board, requesting a variance from the minimum number of off-street parking spaces required by the Borough.  (*Id.* ¶ 24.) HE Group took this action after Moyer told Dong that a variance would be necessary before HE Group could open its restaurant.  (*Id.* ¶ 25.)

A hearing was scheduled on HE Group's variance request for February 13, 2017.  (*Id.* ¶ 26.)  Prior to the hearing, Dong received a call from an agent of the Borough asking Dong to make a written request to cancel the hearing.  (*Id.*)  The agent for the Borough told Dong that the restaurant could not open if HE Group went through with the hearing but that the restaurant would be allowed to open if

the hearing was canceled.  (*Id.* ¶¶ 26–27.)  Dong accordingly submitted a written request to cancel the hearing, and the hearing was canceled.  (*Id.* ¶ 28.)

HE Group opened its restaurant, which was called HE,[1] on the Union Street Property on August 3, 2017.  (*Id.* ¶ 29.)  Less than a month after the restaurant opening, Geosits, who had since taken over the position of Zoning and Codes Officer from Moyer, visited the restaurant several times, putting his business card on the windshields of cars outside the restaurant, entering the restaurant, talking with employees, and stating that neighbors had complained about the restaurant's operations and lack of parking.  (*Id.* ¶¶ 30–31.)  Geosits pressured HE Group to create new off-street parking for the restaurant in order to make a "neighbor" happy.  (*Id.* ¶ 33.)  Dong understood this to be a reference to Mayor Curry.  (*Id.* ¶ 34.)  Dong told Geosits that he thought Geosits was acting pursuant to pressure from Mayor Curry, and Geosits responded "This is America, not Communist China," and told Dong that every neighbor's complaint needed to be addressed.  (*Id.* ¶¶ 35–36.)

In response to Geosits's pressure to create more parking for the restaurant, HE Group repeatedly communicated with Geosits over the next several months and submitted engineer-designed plans for greater off-street parking.  (*Id.* ¶ 37.)

---

[1] According to the amended complaint, "HE stands for 'harmony' in the Chinese language."  (*Id.* ¶ 10.)

Geosits repeatedly rejected these plans for reasons that were unrelated to the quantity of parking, rejecting one such plan because it failed to provide for the planting of ten shrubs along Union Street that would block the view of the parking lot from Mayor Curry's residence and because it failed to provide for the building of a fence that would block views of the parking lot. (*Id.* ¶ 38.) Dong tentatively agreed to Geosits's demands regarding the plans, believing that he had no choice in the matter. (*Id.* ¶ 39.)

On March 19, 2018, Geosits demanded that the engineer working for HE Group add a 100-year flood control plan to the parking proposal, despite the fact that the Union Street property was not in a 100-year flood plain. (*Id.* ¶¶ 40–41.) Shortly after this demand was made, Dong emailed Geosits, Mayor Curry, and the Borough Manager, and informed them that he no longer intended to add off-street parking for the restaurant. (*Id.* ¶ 42.)

After receiving Dong's email, Geosits went to the restaurant and told Dong to submit another plan for off-street parking. (*Id.* ¶ 43.) Geosits informed Dong that if another submission was made, a permit for the plan would be issued. (*Id.*) Around this time, Dong spoke with Borough Council member Jenny Miller regarding Geosits's allegedly arbitrary treatment of the restaurant. (*Id.* ¶ 44.) Miller told Dong that she would look into the matter. (*Id.* ¶ 45.)

Shortly after Geosits's visit to the restaurant, a newly hired codes officer visited the restaurant at Geosits's direction because of a purported violation in the sidewalk outside the restaurant. (*Id.* ¶ 46.) The purported violation was due to a single loose brick in the sidewalk, but the officer nonetheless told Dong that the entire sidewalk might need to be replaced due to the violation pending a decision from Geosits. (*Id.* ¶ 48.) The officer issued a citation for the loose brick, but stated that he had a "weird" feeling about being sent to the restaurant for the sidewalk violation, telling Dong that he felt "used" in the assignment. (*Id.* ¶ 49.) No fine was assessed for the citation, but Geosits nonetheless sent an invoice to HE Group for $99 approximately a year after the citation was issued. (*Id.* ¶ 50.)

Around this time, HE Group protested the requirement that it implement a 100-year flood control plan, at which point Geosits relented, demanding instead that a 25-year flood control plan be implemented, despite the fact that the restaurant was not in a 25-year flood zone. (*Id.* ¶¶ 51–52.)

On June 19, 2018, the Borough issued a permit for the installation of on-site parking at the restaurant. (*Id.* ¶ 53.) The Borough's demand for a 25-year flood plan significantly raised the cost of the project. (*Id.*) Accordingly, after having already spent approximately $10,000 in engineering fees, HE Group decided to stop working with the borough, and Dong informed Geosits that HE Group would not be proceeding with the parking plan. (*Id.* ¶¶ 54–55.)

Around this same time, Geosits directed Dong to have a contractor flatten the stones that had previously been placed on the Union Street property. (*Id.* ¶ 56.) Dong did as directed, hiring a contractor to flatten the stones on October 19, 2018. (*Id.* ¶ 57.) Geosits witnessed and approved the work. (*Id.* ¶ 58.) On March 19, 2019, however, Geosits informed HE Group that it would either need to finish the parking project by complying with the Borough's demands or remove the flattened stones. (*Id.* ¶ 59.) Geosits stated that the flattening of the stones had not been approved. (*Id.* ¶ 60.)

Following this statement from Geosits, HE Group hired a contractor on March 22, 2019, to begin the parking project based on the permitted plan. (*Id.* ¶ 61.) HE Group made a down payment to the contractor of $7,250 towards an expected final cost of $14,500. (*Id.*) The contractor began work on March 24, 2019, but Geosits then issued an order for the contractor to stop work on March 26, 2019. (*Id.* ¶¶ 62–63.) Geosits informed the contractor that there was no permit for the work. (*Id.* ¶ 64.)

After issuing the stop-work order, Geosits spoke directly with HE Group's contractor in the Borough office. (*Id.* ¶¶ 67–68.) The contractor subsequently told Dong that he would need to provide an updated price for the work based on his conversation with Geosits. (*Id.* ¶ 69.) The contractor did not communicate with Dong again for several weeks, at which point Dong contacted the contractor in

7

May 2019.  (*Id.* ¶ 70.)  The contractor met with Dong and said that if he were Dong he would not start the parking project because Geosits wanted to "bleed out" HE Group.  (*Id.* ¶ 72.)  The contractor informed Dong that he would need to increase the price of the project from $14,500 to $40,250.  (*Id.* ¶ 73.)  Dong informed the contractor that he would be on a company trip from May 20, 2019 to June 17, 2019, and that he and the rest of HE Group's leadership team needed time to discuss the increased costs.  (*Id.* ¶ 74.)

The day after Dong left for the company trip, Geosits began fining HE Group at least $500 per day for alleged violations of Borough ordinances.  (*Id.* ¶ 75.)  The Borough, acting through Geosits, filed numerous citations against HE Group in Magisterial District Court, seeking thousands of dollars in fines against HE Group.  (*Id.* ¶¶ 76–77.)  Dong did not learn of these fines and citations until he returned from the company trip, and HE Group accordingly had no choice but to acquiesce in the Borough's demands for the parking project.  (*Id.* ¶ 78.)  HE Group accordingly asked its contractor to begin the work and entered not guilty pleas as to the citations in Magisterial District Court.  (*Id.* ¶¶ 79, 82.)

On June 25, 2019, the contractor informed Dong that Geosits was not allowing him to work on the project.  (*Id.* ¶ 83.)  At this point, Dong learned that the Borough was requiring HE Group to execute a covenant not to sue the Borough

before the contractor could begin work on the project.  (*Id.* ¶ 84.)  Dong refused to sign the covenant.  (*Id.* ¶ 85.)

On the date of a scheduled hearing in Magisterial District Court, a Magisterial District Judge instructed Dong and Geosits to work together to try to resolve the outstanding issues within thirty days.  (*Id.* ¶¶ 86–87.)  HE Group's contractor, however, refused to continue work on the project based on the discussion he had had with Geosits.  (*Id.* ¶ 88.)  HE Group was subsequently found guilty of the citations in Magisterial District Court and has appealed those rulings. (*Id.* ¶ 91.)

HE Group alleges that it has been treated differently from other similarly situated real estate owners in Middletown.  (*Id.* ¶ 94.)  According to the amended complaint, there are at least four other properties within a two-block radius of the restaurant that have not been subjected to the same paving and stormwater control requirements as HE Group's property.  (*Id.* ¶ 95.)  Two of those properties are commercial use properties, one of them is a private residence where a car is regularly parked on an unpaved area, and one is a property that is regularly used as overnight parking for numerous school buses on unpaved ground.  (*Id.*)  HE Group accordingly brings one claim for equal protection against the Defendants, alleging that it has suffered monetary losses of $22,975 as a result of Defendants' actions, as well as a loss of a property development opportunity.  (*Id.* ¶ 100.)

Defendants moved to dismiss the amended complaint on May 1, 2020, and filed a supporting brief on the same day.  (Docs. 13–14.)  Defendants raise four arguments for dismissal: (1) that HE Group fails to state an equal protection claim upon which relief may be granted; (2) that HE Group fails to state a claim for municipal liability against Middletown; (3) that Geosits is entitled to qualified immunity; and (4) that the court lacks subject matter jurisdiction because HE Group's claim is not ripe.  (Doc. 14, pp. 10–24.)[2]  Defendants alternatively seek to strike several paragraphs from the amended complaint as impertinent, immaterial, or scandalous.  (*Id.* at 24–26.)  Briefing on the motion to dismiss is complete, and the motion is ripe for the court's disposition.  (*See* Docs. 14–15, 17, 19.)[3]

## JURISDICTION[4]

This court has jurisdiction under 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.

---

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

[3] This case was originally assigned to United States District Judge Christopher C. Conner, but was reassigned to the undersigned following Judge Conner's February 12, 2021 order recusing himself from the case.

[4] This section does not address Defendants' ripeness argument.  That argument is addressed below.

## STANDARD OF REVIEW UNDER RULE 12(b)(6)

In order to survive a motion to dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

## STANDARD OF REVIEW UNDER RULE 12(b)(1)

In deciding a motion to dismiss for lack of subject matter jurisdiction, the court must decide "whether the allegations on the face of the complaint, taken as

true, allege facts sufficient to invoke the jurisdiction of the district court."

*Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) (quoting

*Licata v. U.S. Postal Serv.*, 33 F.3d 259, 260 (3d Cir. 1994)).

When considering a motion to dismiss for lack of subject matter jurisdiction,

a district court must determine whether the motion presents a facial or factual

challenge to the court's subject matter jurisdiction.  *Long v. SEPTA*, 903 F.3d 312,

320 (3d Cir. 2018) (citing *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357

(3d Cir. 2014)).  A facial attack "considers a claim on its face and asserts that it is

insufficient to invoke the subject matter jurisdiction of the court."  *Id.* (quoting

*Constitution Party*, 757 F.3d at 357).  A factual attack, on the other hand, "contests

the truth of the jurisdictional allegations."  *Id.* (quoting *Constitution Party*, 757

F.3d at 358).

A district court applies a different standard of review depending on whether

a motion to dismiss presents a facial or factual attack to the court's subject matter

jurisdiction.  *Id.* (citing *Constitution Party*, 757 F.3d at 357).  "In reviewing a

facial attack, 'the court must only consider the allegations of the complaint and

documents referenced therein and attached thereto, in the light most favorable to

the plaintiff.'"  *Constitution Party*, 757 F.3d at 357 (quoting *In re Schering Plough

Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012)).

Thus, when reviewing a facial attack, the court applies "the same standard of

review it would use in considering a motion to dismiss under Rule 12(b)(6), *i.e.,* construing the alleged facts in favor of the nonmoving party." *Id.* (citing *Schering Plough*, 678 F.3d at 243). When considering a factual attack, on the other hand, the court "may weigh and 'consider evidence outside the pleadings,'" *id.* (quoting *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)), and is not obligated to treat the plaintiff's allegations as true. *Long*, 903 F.3d at 320.

A factual attack on subject matter jurisdiction may only be brought after the moving defendant has answered the plaintiff's complaint. *Id.* Thus, any motion to dismiss under Rule 12(b)(1) that is filed before the defendant has answered the complaint is "by definition, a facial attack." *Id.* (quoting *Constitution Party*, 757 F.3d at 358).

<h3 style="text-align:center">DISCUSSION</h3>

### A. The Amended Complaint States an Equal Protection Claim Upon Which Relief May Be Granted

Defendants' first argument for dismissal is that the amended complaint fails to state an equal protection claim upon which relief may be granted. (Doc. 14, pp. 11–14.) The equal protection claim in this case is based on a class of one theory. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564–65 (2000). To state an equal protection claim upon which relief may be granted under a class of one theory, a plaintiff must allege that "(1) the defendant treated [the plaintiff] differently from

others similarly situated, (2) the defendant did so intentionally, and (3) there was

no rational basis for the difference in treatment." *Newark Cab Ass'n v. City of*

*Newark*, 901 F.3d 146, 156 (3d Cir. 2018) (quoting *Hill v. Borough of Kutztown*,

455 F.3d 225, 239 (3d Cir. 2006)).  Individuals are similarly situated if they are

alike ""in all relevant respects." *Harvard v. Cesnalis*, 973 F.3d 190, 205 (3d Cir.

2020) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)).

Defendants argue that the amended complaint fails to state an equal

protection claim because it does not identify similarly situated property owners

who were treated differently from HE Group.  (Doc. 14, p. 12.)  Relying on

*Congregation Kol Ami v. Abington Twp.*, 309 F.3d 120, 139, 142 (3d Cir. 2002),

Defendants argue that the amended complaint fails to state a claim because it does

not allege that the properties in question have a similar "impact on the surrounding

community," and does not allege whether the land use of the properties in question

is similar in "scale, purpose, and intensity."  (Doc. 14, pp. 11–12.)  Defendants

further argue that the amended complaint does not allege any "differential

treatment," as there is "no description at all of how the [other] properties (or

owners) have been treated by the Borough."  (*Id.* at 13.)

Having reviewed the amended complaint, the court will deny this portion of

Defendants' motion to dismiss.  The amended complaint alleges that Defendants

arbitrarily enforced borough zoning rules against HE Group by requiring

14

stormwater control developments and parking developments that were not required for other properties in the same geographic area.  (Doc. 11, ¶ 95.)  The amended complaint alleges that the owners of those other properties are similarly situated to HE Group because their properties are in the same two-block radius as HE Group's Union Street property and because there is "extensive parking" at the other properties like there is at HE Group's property.  (*Id.*)  These allegations are sufficient to allege that HE Group was treated differently from other similarly situated property owners.  The amended complaint also sufficiently alleges that the differential treatment was intentional and that there was no rational basis for the differential treatment.  HE Group has therefore adequately pleaded an equal protection claim under a class of one theory.

Defendants' reliance on *Congregation Kol Ami* is unavailing, as the present case is distinguishable from that case.  In *Congregation Kol Ami*, a synagogue sought to move to a suburban neighborhood that was zoned for residential use only, and requested either a variance or a special exception from the residential zoning requirements for that purpose.  *Congregation Kol Ami*, 309 F.3d at 124.  After its requests were denied, the synagogue filed suit in the Eastern District of Pennsylvania and subsequently moved for summary judgment as to its claim that the zoning ordinance in question was unconstitutional on its face.  *Id.*  The district court granted the motion, but instead of finding that the ordinance was facially

unconstitutional, the court found that the ordinance was unconstitutional as applied to the synagogue.  *Id.*

On appeal, the Third Circuit vacated the district court's order and remanded the case with instructions for the district court to consider whether the synagogue's use of the property was similar to the uses that were allowed by the zoning ordinance.  *Id.* at 125–26.  In reaching its decision, the Third Circuit reasoned that "the first inquiry a court must make in an equal protection challenge to a zoning ordinance is to examine whether the complaining party is similarly situated to other uses that are either permitted as of right, or by special permit, in a certain zone."  *Id.* at 137.

Thus, *Congregation Kol Ami* provides an analytical framework for lower courts to consider a facial or as-applied equal protection challenge to a zoning ordinance.  *Id.*; *see also Melrose, Inc. v. City of Pittsburgh*, 613 F.3d 380, 394 (3d Cir. 2010) (noting that *Congregation Kol Ami* discusses the inquiry a court must perform in "reviewing an equal protection challenge to a zoning ordinance").  In this case, however, HE Group is not bringing any challenge to a zoning ordinance. Rather, HE Group's equal protection claim is based on allegedly arbitrary and irrational enforcement of the Borough's zoning laws.  *Congregation Kol Ami* is therefore inapposite.

16

Moreover, Defendants' argument misstates the holding of *Congregation Kol Ami*. Defendants argue that under *Congregation Kol Ami*, a court considering whether two properties are similarly situated "must consider 'whether the two entities have the same impact' on the surrounding community and whether the entities are similar in 'scale,' 'purpose,' and 'intensity' of land use." (Doc. 14, p. 11 (quoting *Congregation Kol Ami*, 309 F.3d at 139, 142).)

*Congregation Kol Ami* states no such thing. In *Congregation Kol Ami*, the Third Circuit remanded to the district court with instructions to consider whether the entities in question were similarly situated and noted in dicta that the district court's analysis "*may* . . . involve an inquiry into whether the two entities have the same impact." *Congregation Kol Ami*, 309 F.3d at 139 (emphasis added). The court further noted, again in dicta, that the comparator properties at issue in the case "differ[ed] in scale and purpose" from the proposed synagogue and that the proposed use of the property as a synagogue "presents an intense use of the land, which the Township might determine was incompatible with its residential designation." *Id.* at 142. Thus, contrary to Defendants' argument, the *Congregation Kol Ami* court simply noted some factors that could inform the district court's subsequent analysis as to whether the plaintiff and comparator properties were similarly situated; it did not hold that a district court conducting such an analysis had to consider those factors. Accordingly, because the amended

17

complaint adequately pleads an equal protection claim and Defendants' arguments for dismissal are unavailing, the court will deny the motion to dismiss to the extent that it seeks the dismissal of the equal protection claim.

### B. The Amended Complaint States a Municipal Liability Claim Upon Which Relief May Be Granted

Defendants next argue that the complaint should be dismissed with respect to the Borough because Geosits's actions as the Borough's Zoning and Codes Officer cannot be imputed to the Borough for purposes of municipal liability. (Doc. 14, pp. 14–18.)

Local governments may not be held vicariously liable for their employees' actions under 42 U.S.C. § 1983. *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 691 (1978)). Rather, a municipality may only be held liable for the actions of its employee if the actions were pursuant to "an official policy or practice." *Hill*, 455 F.3d at 245 (citing *Monell*, 436 U.S. at 690).

An individual's conduct may be imputed to a municipality when "(1) the individual acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, (2) the individual himself has final policy-making authority such that his conduct represents official policy, or (3) a final policy-maker renders the individual's conduct official for liability

purposes by having delegated to him authority to act or speak for the government, or by ratifying the conduct or speech after it has occurred." *Id.* (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478–84 (1986)).  Thus, an employee "who lacks policymaking authority can still bind the municipality if a municipal policymaker delegated power to the employee or ratified his decision." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 264 (3d Cir. 2010) (citing *La Verdure v. Cty. of Montgomery*, 324 F.3d 123, 125 (3d Cir. 2003)).

Defendants in this case argue that the municipal liability claim against the Borough should be dismissed because Geosits's actions were not pursuant to any municipal policy, custom, or practice.  (Doc. 14, pp. 14–18.)  HE Group argues that the claim should not be dismissed because the Borough delegated authority to Geosits to issue citations for zoning and code violations.  (Doc. 15, p. 20.)

The court agrees with HE Group.  The amended complaint in this case alleges that Geosits was hired by the Borough to act as Zoning and Codes Officer on behalf of the Borough, *see* Doc. 11, ¶ 3, and by Defendants' own admission, Geosits's job as Zoning and Codes Officer was to apply the Borough's zoning and codes policies.  (*See* Doc. 14, pp. 15–16.)  Geosits's actions are therefore pursuant to an official government policy because the Borough has "delegated to him authority to act or speak" on the Borough's behalf.  *Hill*, 455 F.3d at 245.  The

court will accordingly deny the motion to dismiss to the extent that it seeks to dismiss the municipal liability claim.

## C. The Motion to Dismiss on the Basis of Qualified Immunity Is Denied

The court will next address Defendants' argument that Geosits is entitled to qualified immunity. The doctrine of qualified immunity recognizes that despite their participation in constitutionally impermissible conduct, government officials "may nevertheless be shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow*, 457 U.S. at 818). The doctrine "protects all but the plainly incompetent or those who knowingly violate the law." *Kisela v. Hughes*, 584 U.S. __, 138 S. Ct. 1148, 1152 (2018) (quoting *White v. Pauly*, 580 U.S. __, 137 S. Ct. 548, 551 (2017)).

Courts follow a two-pronged test to determine whether qualified immunity applies. *Pearson*, 555 U.S. at 232. First, the court must determine whether the defendants violated the plaintiff's statutory or constitutional right. *District of*

*Columbia v. Wesby*, 583 U.S. __, 138 S. Ct. 577, 589 (2018) (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).  Second, the court must determine whether the right at issue was clearly established at the time of the violation.  *Id.* (citing *Reichle*, 566 U.S. at 664).  The court may exercise its discretion in deciding "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson*, 555 U.S. at 236.  Defendants asserting that they are entitled to qualified immunity have the burden to prove that the doctrine applies.  *Halsey v. Pfeiffer*, 750 F.3d 273, 288 (3d Cir. 2014).

In this case, the court will deny the motion to dismiss to the extent that it seeks dismissal on the basis of qualified immunity because there are questions of fact as to whether Geosits violated HE Group's constitutional rights and because Defendants have not raised any argument as to whether the right at issue was clearly established.  *See Halsey*, 750 F.3d at 288 (noting that party asserting qualified immunity has the burden to prove that the doctrine applies).  Accordingly, the motion to dismiss on the basis of qualified immunity is denied without prejudice to Defendants' right to raise the defense of qualified immunity at the summary judgment stage.

### D. HE Group's Claim Is Ripe for Adjudication

As an alternative to its argument that the amended complaint should be dismissed for failure to state a claim, Defendants also argue that the amended complaint should be dismissed for lack of subject matter jurisdiction because HE Group's claims are not ripe for disposition.  (*See* Doc. 14, pp. 20–24.)

A district court only has subject matter jurisdiction over a claim if the claim is ripe for resolution.  *Wayne Land & Mineral Grp. LLC v. Del. River Basin Comm'n*, 894 F.3d 509, 522 (3d Cir. 2018) (citing *Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003)).  "The function of the ripeness doctrine is to determine whether a party has brought an action prematurely."  *Jie Fang v. Dir. U.S. Immigration & Customs Enforcement*, 935 F.3d 172, 185 (3d Cir. 2019).

When considering whether a claim is ripe, "a court must consider (1) the fitness of the issues for judicial decision and (2) the hardship to the parties from withholding judicial consideration."  *Comite' de Apoyo a los Trabajadores Agricolas v. Perez*, 774 F.3d 173, 183 (3d Cir. 2014) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967)).  A claim is not ripe "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Sherwin-Williams Co. v. Cty. of Del., Pa.*, 968 F.3d 264, 272 (3d Cir. 2019) (quoting *Wyatt v. Virgin Islands, Inc.*, 385 F.3d 801, 806 (3d Cir. 2004)).

Defendants in this case rely on the finality rule articulated in *Taylor Inv., Ltd. v. Upper Darby Twp.*, 983 F.2d 1285 (3d Cir. 1993), to argue that HE Group's claim is not ripe.  (Doc. 14, pp. 21–24.)  In *Taylor*, a township zoning officer awarded a use permit to a group of landowners to allow a business to operate on the landowners' property, but the township then shut the business down on the day of its opening and revoked the use permit, finding that the use permit had been awarded based on false and misleading information supplied by the landowners' tenant. *Taylor*, 983 F.2d at 1288.  The landowners did not reapply for a use permit, appeal the revocation of the use permit to the township's zoning hearing board, or seek a variance or special exception from the township's zoning ordinance, despite all three options being available under local and state law.  *Id.* at 1289.  Instead, the landowners filed suit in federal court alleging that the township had violated their constitutional rights.  *Id.*  The district court granted summary judgment to the township, finding that the landowners' claims were not ripe for adjudication, and the landowners appealed to the Third Circuit.  *Id.*

On appeal, the Third Circuit agreed that the claims were not ripe, holding that challenges to local land-use decisions "are not ripe unless plaintiff has given local land-planning authorities the opportunity to render a final decision on the nature and extent of the impact of the zoning ordinances on plaintiff's property." *Id.* at 1290 (citing *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of*

*Johnson City*, 473 U.S. 172 (1985)).  This finality rule, the court noted, "recognizes that, with respect to zoning disputes, a property owner suffers no mature constitutional injury until the zoning authority defines the application of the zoning ordinance and defines the harm to the owner." *Id.* at 1291.

Defendants argue that HE Group's claims are not ripe under *Taylor* because Geosits's issuance of a stop-work order and issuance of citations against HE Group "are not final actions of the relevant local authorities." (Doc. 14, p. 21.) Defendants note that under Pennsylvania law, the Middletown Zoning Hearing Board has final authority over the Borough's zoning, "and only the ZHB can determine whether Geosits misinterpreted or misapplied any provision of the Borough's ordinance with respect to Plaintiff." (*Id.* at 23.)  Thus, Defendants argue, because HE Group did not appeal Geosits's actions to the Zoning Hearing Board, its claims before this court are not ripe. (*Id.*)

HE Group argues that the case is analogous to *Lauderbaugh v. Hopewell Twp.*, 319 F.3d 568 (3d Cir. 2003), a case where the Third Circuit clarified the scope of *Taylor's* finality rule. (*See* Doc. 15, p. 23.)  In *Lauderbaugh*, the plaintiff bought a mobile home and sought to locate the mobile home in a township in western Pennsylvania. *Lauderbaugh*, 319 F.3d at 571.  The township's zoning officer contacted the plaintiff and informed her that mobile homes were not permitted in the zoning area where she sought to locate her home. *Id.*  According

24

to the zoning officer, the plaintiff responded that she planned to install a modular home on the property, rather than a mobile home. *Id.* Following this exchange, the township issued a permit to the plaintiff, allowing her to build a "mason/frame" structure on the property. *Id.* at 572. The plaintiff nonetheless began to install her mobile home on the property, at which time the zoning officer revoked her building permit. *Id.* The plaintiff appealed to the township's zoning hearing board, but the board continued the hearing on her appeal indefinitely. *Id.* The zoning officer then sent a letter to the plaintiff demanding that she immediately remove the mobile home from the property, and the plaintiff again appealed to the zoning hearing board. *Id.* At this point, despite the plaintiff having filed two appeals to the zoning hearing board that were still pending, the zoning officer sent another letter in which he demanded that the plaintiff remove the mobile home and threatened state court litigation if the plaintiff did not do so. *Id.* The plaintiff subsequently brought suit against the township in the United States District Court for the Western District of Pennsylvania, and the township argued that the plaintiff's claims were not ripe. *Id.* at 573–74.

The district court in *Lauderbaugh* found that the plaintiff's claims were ripe, and the Third Circuit affirmed that ruling because the township had "treated its zoning decision as finally resolved." *Id.* at 574. The Third Circuit reasoned that the township could not "prevent Lauderbaugh from installing her home, threaten

state court litigation to force its removal, and, at the same time, claim there is no controversy ripe for adjudication." *Id.* The court found that the case was distinguishable from *Taylor* because the township's "decision to ignore the appeals and enforce its zoning decision by forcing Lauderbaugh to pay to move her home ha[d] created a justiciable controversy." *Id.* at 575. The township could not "treat its zoning decision as final enough to force a significant hardship upon Lauderbaugh by forcing her to pay to move her home but not final enough to be ripe for adjudication." *Id.*

The *Lauderbaugh* court emphasized that *Taylor's* finality rule is designed to ensure that a suit in federal court is not brought until "an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Id.* In other words, *Taylor* simply requires that a plaintiff's claim not be brought prematurely; it does not require that a plaintiff exhaust administrative remedies before filing suit in federal court. *Id.* "Thus," the *Lauderbaugh* court held, "the finality rule allows a suit whenever a 'decision maker has arrived at a definitive position on the issue that inflicts an actual, concrete injury.'" *Id.* (quoting *Williamson*, 473 U.S. at 193).

*Lauderbaugh* therefore "teaches that, when applying the finality rule, we should not stand on formality." *Ethan Michael, Inc. v. Union Twp.*, 108 F. App'x 43, 47 (3d Cir. 2004). Instead, the court should "look beyond" whether the local

zoning hearing board has reached a decision "and determine whether the Township has made a final decision—however that decision is manifested."  *Id.*; *see also Peachlum*, 333 F.3d at 436–37 (noting that, although "courts prefer administrative finality," the question of ripeness is "not to be confused with exhaustion. . . . [W]here a party suffers a concrete injury prior to final administrative disposition, such as fines or unreasonable appeal fees, the claim may be considered sufficiently ripe.").

HE Group argues that this case is analogous to *Lauderbaugh* because the Borough has instituted state court litigation to collect fines from HE Group and has therefore taken a "sufficiently final" position to make the case ripe for adjudication.  (Doc. 15, p. 24.)  HE Group also notes that it attempted to appeal Geosits's actions to the Zoning Hearing Board but its attempts were frustrated by the Borough's threats that HE Group would not be allowed to open its restaurant if it appealed to the Zoning Hearing Board.  (*Id.*)

Defendants argue that *Lauderbaugh* does not support HE Group's argument that the case is ripe because, unlike the plaintiff in *Lauderbaugh*, HE Group "undertook no efforts to avail itself of any appeals processes, let alone efforts that approach the actions taken by Lauderbaugh."  (Doc. 17, p. 17.)  HE Group responds that the Defendants' argument misapplies a due process standard to the equal protection context and argues that its claims are ripe because it attempted to

appeal to the Zoning Hearing Board but was frustrated by the Borough's threats. (Doc. 19, pp. 6–9.)  According to HE Group, "Defendants cannot have it both ways – its decision cannot be final enough to seek thousands of dollars in fines from HE Group yet still in its preliminary stages rendering this suit unripe and unfit for judicial review when the Borough coercively frustrated such review (as well as the construction project itself)."  (*Id.* at 9.)

Having reviewed the amended complaint and the parties' arguments, the court agrees with HE Group that the Borough's initiation of state court litigation against HE Group is analogous to the threat of state court litigation in *Lauderbaugh*.  The Borough has therefore "arrived at a definitive position on the issue that inflicts an actual, concrete injury" as to HE Group, and HE Group's claims are ripe for adjudication.  *Lauderbaugh*, 319 F.3d at 575.

Defendants are correct that HE Group did not appeal Geosits's decision to the Middletown Zoning Hearing Board, but such an appeal is not necessarily required before a plaintiff may bring suit in federal court.  As the Third Circuit explained in *Lauderbaugh*, the *Taylor* finality rule does not require a plaintiff to exhaust administrative remedies before bringing suit, it simply requires that claims not be brought prematurely in federal court before an administrative decision "has been formalized and its effects felt in a concrete way by the challenging parties." *Id.* (quoting *Abbott Labs.*, 387 U.S. at 149).  Here, the Borough has reached a final

and formal decision by initiating state court proceedings against HE Group, and the Borough "cannot treat its zoning decision as final enough to force a significant hardship" on HE Group through state court litigation "but not final enough to be ripe for adjudication." *Id.* Accordingly, the motion to dismiss will be denied to the extent that it seeks dismissal for lack of subject matter jurisdiction.

### E. Defendants' Motion to Strike Is Denied

Finally, the court will consider the portion of Defendants' motion that seeks to strike certain paragraphs from the amended complaint. (*See* Doc. 14, pp. 24– 26.) Under Federal Rule of Civil Procedure 12(f), a party may move a district court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." This rule is "designed to reinforce the requirement in Rule 8 . . . that pleadings be simple, concise, and direct." 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1380 (3d ed. 2020 update). To that end, the purpose of any motion to strike should be to "clean up the pleadings, streamline litigation, and avoid the unnecessary forays into immaterial matters." *United States v. Educ. Mgmt. Corp.*, 871 F. Supp. 2d 433, 460 (W.D. Pa. 2012) (citation omitted).

Motions to strike should not be used to persuade a court to determine disputed questions of law. *See Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 218 (D.N.J. 1993) (citations omitted). They also "may not serve as an avenue

to procure the dismissal of all or part of a complaint." *Davila v. N. Reg'l Joint Police Bd.*, 979 F. Supp. 2d 612, 624 (W.D. Pa. Oct. 21, 2013), *vacated in part on reconsideration*, 2014 U.S. Dist. LEXIS 102143 (July 28, 2014) (citing *Giles v. Phelan, Hallinan & Schmieg, L.L.P.*, 901 F. Supp. 2d 509, 530–31 (D.N.J. 2012)).

The burden rests with the moving party to show that the challenged matter should be stricken. *In re Ry. Indus. Emp. No-Poach Antitrust Litig.*, 395 F. Supp. 3d 464, 496 (W.D. Pa. 2019). Thus, the movant must demonstrate that the matter falls within one of the categories listed in Rule 12(f). "Immaterial" matter is that which "has no essential or important relationship to [any] claim[s] for relief." *Wagner v. Holtzapple*, 101 F. Supp. 3d 462, 488 (M.D. Pa. 2015) (citing *Del. Health Care, Inc. v. MCD Holding Co.*, 893 F. Supp. 1279 (D. Del. 1995)). "Impertinent" matter consists of "statements that do not pertain, and are not necessary, to the issues in question." *Id.* (citation omitted). And "scandalous" matter is that which "casts a derogatory light on someone, uses repulsive language, or detracts from the dignity of the court." *Id.* (citing *Carone v. Whalen*, 121 F.R.D. 231, 232 (M.D. Pa. 1988)).

Courts possess "considerable discretion" in deciding whether to strike portions of a pleading, but motions to strike are generally "not favored." *Balon v. Enhanced Recover Co., Inc.*, 316 F.R.D. 96, 98 (M.D. Pa. 2016) (quoting *Stewart v. Keystone Real Estate Grp. LP.*, No. 4:14-CV-01050, 2015 WL 1471320, at *5

(M.D. Pa. Mar. 31, 2015)).  Motions to strike "should be denied unless the allegations have no possible relation to the controversy, may cause prejudice to one of the parties, or confuse[] the issues."  *Id.* (quoting *Wincovitch v. Edwin A. Abrahamsen & Assocs.*, No. 3:12-CV-01846, 2013 WL 1909578, at *1 (M.D. Pa. May 8, 2013)).

In this case, Defendants seek to strike several paragraphs from the amended complaint as impertinent and immaterial because the amended complaint contains allegations "relating to unrelated parties, including the Mayor of Middletown, the Historical Restoration Commission, and a contractor hired by Plaintiff, none of which bear on the allegedly improper conduct of Defendants: Geosits or the Borough."  (Doc. 14, p. 25.)  Defendants further seek to strike as irrelevant and immaterial allegations of code violations for which no fines were ever assessed and allegations relating to the flattening of stones on HE Group's property "that do not relate to the central dispute Plaintiff raises regarding parking permitting."  (*Id.*)

The court will deny the motion to strike because the allegations that Defendants seek to strike are neither impertinent nor immaterial.  Although the allegations are not directly relevant to the question of whether Defendants treated HE Group differently from other similarly situated property owners, the court agrees with HE Group that the allegations in question help to "illustrate the intent and motivation to treat HE Group differently than its similarly situated neighbors."

(*See* Doc. 19, pp. 4–5.)  The allegations in question are therefore potentially relevant to HE Group's claims, and the court will deny the motion to strike them from the amended complaint.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss and/or strike is denied.  An appropriate order follows.

<u>s/Jennifer P. Wilson</u>
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: March 3, 2021